**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

CASE NO.:

JACOB SNYDER,
on behalf of himself and all others similarly situated,

    Plaintiff,

v.

MODERN HOUSE & BUILDING MOVERS, INC.,
a Florida Profit Corporation,
JEREMY PATTERSON, individually, and
ASHLEY PATTERSON, individually,

    Defendants.

_____/

## COLLECTIVE ACTION COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, JACOB SNYDER ("Plaintiff"), on behalf of himself and all others similarly situated, sues Defendants MODERN HOUSE & BUILDING MOVERS, INC. ("Modern Movers" or "Defendant"), JEREMY PATTERSON, individually ("JP"), and ASHLEY PATTERSON, individually ("AP") (collectively, "Defendants"), as joint employers, and alleges as follows:

## INTRODUCTION

1.    This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), for Defendants' failure to pay Plaintiff and similarly situated employees overtime compensation for all hours worked in excess of forty (40) hours per workweek.

1

2. Defendants classified Plaintiff and similarly situated employees as "exempt" salaried employees and paid them a fixed weekly salary regardless of the number of hours they actually worked, despite the fact that their primary duties consisted of manual, non-exempt labor.

3. Defendants employed Plaintiff and similarly situated employees as laborers — regardless of whatever title Defendants informally assigned to a given employee (including, without limitation, "superintendent," "foreman," "lift foreman," or "field supervisor") — whose work was overwhelmingly manual and physical in nature. Plaintiff actively worked on site performing a variety of hands-on tasks, including sketching footer details, loading and unloading construction materials and equipment, physically lifting houses, stacking cribbing and block, moving and operating jacks, performing mechanical repairs, correcting mistakes made by other trades, dealing directly with homeowners on site, and driving company vehicles between residential and commercial job sites. Plaintiff had no genuine authority to hire or fire employees and, at most, gave his opinion on candidates; he did not create work schedules for himself or anyone else.

4. Plaintiff worked alongside other hourly-paid employees, including the owner's son, who held the title of head of field operations and was himself paid on an hourly basis.

5.    Additionally, upon information and belief, Defendants' office manager/general manager — the owner's daughter — was paid hourly, reflecting that Defendants recognized that certain supervisory-sounding roles within the company did not warrant exemption from overtime.

6.    Defendants' own internal payroll records demonstrate that Defendants had both the ability and the practice of tracking Plaintiff's actual daily and weekly hours worked, yet nonetheless capped Plaintiff's paid "Regular" hours at forty (40) hours per week regardless of the number of hours he actually worked, which regularly exceeded fifty (50) to sixty-eight (68) hours per week.

7.    Defendants' conduct, as alleged herein, violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

## JURISDICTION AND VENUE

8.    This Court has subject-matter jurisdiction over this action pursuant to the FLSA, 29 U.S.C. § 201, et seq., to recover unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and costs of this action.

9.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the laws of the United States, specifically 29 U.S.C. §216(b).

3

10.     This Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA may be maintained against any employer in any Federal or State court of competent jurisdiction.

11.     This Court has personal jurisdiction over Defendants because Defendant Modern Movers is registered with the Florida Department of State, Division of Corporations, to conduct business within Florida and continues to conduct business within this District, and Defendants JP and AP are, upon information and belief, residents of Florida who direct and control Modern Movers' operations within this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants conduct substantial business within this District, Defendant Modern Movers maintains an office and operations within this District, and a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

## PARTIES

13.     Plaintiff is a resident of Charlotte County, Florida, and resides within this District.

14.     Plaintiff was employed by Defendants as a salaried laborer from on or about July 8, 2024 through on or about November 10, 2025. Defendants' written offer of employment to Plaintiff did not specify a job title; at various points during

4

his employment, Plaintiff was referred to using titles such as "superintendent," "foreman," "lift foreman," and "field supervisor," though his actual duties, described below, were those of a laborer.

15. Defendant Modern Movers is a Florida Profit Corporation authorized to do, and doing, business in Florida, including within this District, with a principal place of business at 12011 44th St N, Clearwater, Florida 33762, and operations conducted from, among other locations, 208 3rd St, Fort Myers, Florida 33907. *See* Sunbiz report attached as Exhibit A.

16. Defendant Jeremy Patterson ("JP") is, upon information and belief, the President and an owner of Modern Movers.

17. At all times material hereto, JP regularly engaged in activities including, but not limited to: (a) exercising ultimate authority over Modern Movers' business operations and personnel policies, including its practice of classifying laborers as exempt from overtime; (b) exercising authority over the compensation structure and rates of pay provided to Plaintiff and other similarly situated employees; (c) exercising authority to hire and fire employees of Modern Movers; and (d) exercising significant control over Modern Movers' day-to-day affairs, in his capacity as President.

18. Defendant Ashley Patterson ("AP") is, upon information and belief, the Manager of Modern Movers and its Registered Agent.

5

19. At all times material hereto, AP regularly engaged in activities including, but not limited to: (a) running the day-to-day operations of Modern Movers; (b) directly supervising Plaintiff and other similarly situated employees, who reported directly to her; (c) extending offers of employment on behalf of Modern Movers, including the offer of employment extended to and executed by AP for Plaintiff; (d) determining or participating in determining the rates and method of pay provided to Plaintiff and other similarly situated employees, including the classification of such employees as exempt from overtime; and (e) exercising significant day-to-day control over Modern Movers' personnel and payroll practices.

20. In light of the duties performed by JP and AP, each is defined as an "employer" within the meaning of 29 U.S.C. §203(d) and is directly, jointly, and severally liable to Plaintiff and the putative class if Plaintiff prevails in this action.

21. Defendants are "joint employers" under the FLSA by virtue of their rigorous control and unified operations over Modern Movers' workforce, including Plaintiff and other similarly situated employees, and the work performed by Plaintiff and the putative class benefits each Defendant.

22. Plaintiff's consent to act as Class Representative is attached as Exhibit B.

6

## ENTERPRISE AND INDIVIDUAL COVERAGE

23.     At all times relevant hereto, Defendant Modern Movers has been an "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1) and an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

24.     At all times relevant hereto, Defendant Modern Movers' annual gross volume of sales made or business done was, upon information and belief, not less than $500,000.00.

25.     At all times relevant hereto, Defendant Modern Movers had two (2) or more employees, including Plaintiff and other similarly situated employees, who handled goods and materials that had moved in interstate commerce, including construction materials, equipment, vehicles, tools, and supplies sourced from out-of-state vendors and suppliers.

26.     Alternatively, and at all times relevant hereto, Plaintiff was individually engaged in commerce or in the production of goods for commerce, such that individual coverage applies to Plaintiff and similarly situated employees under the FLSA, in that Plaintiff and similarly situated employees regularly handled, used, and worked with equipment, materials, vehicles, and supplies that had moved in interstate commerce, and regularly operated company vehicles as part of their job duties.

27.    The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives while actively engaged in managing Defendants' business or affairs and with Defendants' authorization.

## **GENERAL FACTUAL ALLEGATIONS**

28.    Defendant Modern Movers is in the business of raising, elevating, and relocating houses, buildings, and other large structures, and providing related foundation repair services, throughout Florida.

29.    Defendant Modern Movers holds itself out to the public via its website:

> "We bring our experience, expertise, and help to all communities and families that have been affected by natural disasters. When you hire Modern House & Building Movers, you get a company committed to elevating your home safely, skillfully, and carefully above flood waters with impressive attention to detail through every step."

*See https://modernmovers.com/about-us/ (last visited July 17, 2026).*

30.    Defendant Modern Movers' website further identifies its services as including home lifting, structural moving, foundation repair, and helical pile installation, and identifies office locations in Orlando, Florida and Clearwater, Florida.

31.    Defendants hired Plaintiff on or about July 8, 2024, pursuant to a written offer letter, signed by Defendant AP in her capacity as Manager, which

identified a starting salary of $85,000 per year but did not identify the job title, duties, or FLSA classification for the position offered. The offer letter advised Plaintiff that he would report directly to Defendant AP, Manager, and Defendant JP, President. *See* Offer Letter attached as Exhibit C.

32.     During his employment, Plaintiff received at least one salary increase, such that by early 2025 Defendants' own payroll records reflect Plaintiff being paid a weekly salary of $1,923.07, equivalent to an annual salary of approximately $100,000.

33.     Regardless of Plaintiff's salary level at any given time, Defendants classified Plaintiff as an exempt, salaried employee not entitled to overtime compensation.

34.     Plaintiff's actual day-to-day duties were not managerial, executive, administrative, or professional in nature. Plaintiff:

a.      did not have the authority to hire or fire employees, and at most provided informal input on hiring decisions;

b.      did not create work schedules for himself or any other employee;

c.      worked alongside and under the direction of hourly-paid employees, including Defendants' head of field operations;

d.      reported to Defendant AP, who was Modern Movers' Manager;

e.    spent the substantial majority of his working time performing physical, manual labor in the field — including loading and unloading materials, operating jacking equipment to lift structures, performing mechanical repairs, and driving company vehicles — rather than performing exempt managerial or administrative work; and

f.    did not exercise discretion and independent judgment with respect to matters of significance.

35.    Plaintiff and similarly situated employees do not qualify for the executive exemption under the FLSA.

36.    Plaintiff and similarly situated employees do not qualify for the administrative exemption under the FLSA.

37.    Plaintiff and similarly situated employees do not qualify for the professional exemption under the FLSA.

38.    Plaintiff and similarly situated employees do not qualify for the exemption for commissioned employees of a retail or service establishment under 29 U.S.C. § 207(i). Defendant Modern Movers is not a retail or service establishment within the meaning of that provision, and, in any event, Plaintiff and similarly situated employees were paid a fixed weekly salary and did not receive commissions on goods or services of any kind.

39.    Defendants do not maintain, and cannot point to, any bona fide exemption applicable to Plaintiff or the putative FLSA Collective.

40.    Plaintiff was assigned a company vehicle that he was required to take home and report to job sites directly from home, often beginning his workday before 6:00 a.m. and continuing into the evening.

41.    Plaintiff maintained handwritten weekly timesheets reflecting the actual hours he worked at each job site, which he submitted to Defendants' payroll personnel on a weekly basis. Those timesheets regularly reflect total weekly hours of fifty (50) to sixty-eight (68) hours or more. *See* Handwritten Timesheets attached as Exhibit D.

42.    Notwithstanding Defendants' receipt of Plaintiff's actual weekly hours, Defendants' own internal payroll records reflect that Defendants capped Plaintiff's paid "Regular" hours at forty (40) hours per week — and, for at least one pay period, Defendants' payroll system reflects that Defendants tracked Plaintiff's actual hours in partial-hour, daily increments, demonstrating that Defendants had both the ability and the practice of tracking Plaintiff's actual hours worked, yet still failed to pay him any overtime premium for hours worked over forty (40) in a workweek.

43.    Upon information and belief, Defendants made improper deductions from at least one other similarly-situated salaried employee's pay for absences of

11

less than a full workweek, further reflecting that Defendants did not, in practice, pay Plaintiff and similarly situated employees on a true salary basis.

44.    Plaintiff never received overtime compensation of any kind for any hours worked in excess of forty (40) in a workweek during his employment with Defendants.

45.    Defendants knew, or showed reckless disregard for whether, their pay practices as to Plaintiff and similarly situated employees violated the FLSA, including because Defendants' own payroll system tracked actual daily and weekly hours, yet Defendants made no corresponding overtime payments, such that Defendants' violations of the FLSA were willful.

46.    Defendants terminated Plaintiff's employment on or about November 10, 2025.

47.    Because Defendants' records, to the extent they mischaracterize Plaintiff's and similarly situated employees' hours as always falling within a flat forty (40) hour "Regular" bucket, are inaccurate and/or inadequate to reflect actual hours worked, Plaintiff and other similarly situated employees can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *See Anderson et al v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946).

48.     All conditions precedent to the filing of this action have occurred, been performed, or have been waived.

## COLLECTIVE ACTION ALLEGATIONS

49.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) on behalf of:

All current and former laborers of Defendants who, at any time within the three (3) years preceding the filing of this Complaint, were classified by Defendants as exempt salaried employees (regardless of the specific title used by Defendants, including but not limited to "superintendent," "foreman," "lift foreman," or "field supervisor"), and who were not paid overtime compensation for hours worked in excess of forty (40) in a workweek.

(hereinafter, the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

50.     Plaintiff and the members of the FLSA Collective performed the same or similar job duties as one another, in that they performed manual labor duties at the direction of, and for the benefit of, Defendants.

51.     Upon information and belief, Plaintiff and the members of the FLSA Collective were subjected to the same policy and practice of being classified as exempt and paid a fixed salary regardless of actual hours worked, without regard to whether their actual job duties satisfied any FLSA exemption.

52.     The members of the FLSA Collective are readily identifiable from payroll and personnel records maintained by Defendants and will necessarily present legal and factual issues that are nearly the same, if not identical, to those presented

13

by Plaintiff—namely, whether Defendants' uniform practice of classifying laborers as exempt violated the FLSA.

53. Defendants acted willfully in failing to pay Plaintiff and the members of the FLSA Collective in accordance with the FLSA.

54. These similarly situated employees should be informed of the pendency of this action and given the opportunity to join as required by law.

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT (UNPAID OVERTIME COMPENSATION)

55. Plaintiff re-alleges and incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

56. The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of forty (40) hours in a single workweek. 29 U.S.C. § 207(a)(1).

57. At all times material hereto, Plaintiff and the members of the FLSA Collective were non-exempt employees entitled to the protections of the FLSA, notwithstanding Defendants' classification of them as exempt.

58. Defendants failed to pay Plaintiff and the members of the FLSA Collective overtime compensation for hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

59.     Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff and the members of the FLSA Collective to a three-year limitations period.

60.     As a direct and proximate result of Defendants' violations of the FLSA, Plaintiff and the members of the FLSA Collective have suffered damages in the form of unpaid overtime wages in amounts to be proven at trial.

61.     Plaintiff and the members of the FLSA Collective are entitled to recover their unpaid overtime wages, an equal amount in liquidated damages pursuant to the FLSA, and reasonable attorneys' fees and costs incurred in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, respectfully moves this Court for an order conditionally certifying this case as a collective action and permitting notice to issue pursuant to the FLSA, and seeks entry of judgment against Defendants, jointly and severally, as follows:

a.     Declaring that Defendants' acts and omissions, as alleged herein, violate the FLSA;

b.     Designating Plaintiff as Class Representative on behalf of the FLSA Collective;

c.     Awarding Plaintiff and the FLSA Collective all unpaid overtime wages owed under the FLSA;

15

d.      Awarding Plaintiff and the FLSA Collective an equal amount in liquidated damages pursuant to the FLSA;

e.      Declaring that Defendants' violations were willful and that a three-year limitations period applies;

f.      Awarding Plaintiff and the FLSA Collective reasonable attorneys' fees and costs pursuant to the FLSA;

g.      Awarding Plaintiff and the FLSA Collective pre-judgment and post-judgment interest as allowed by law; and

h.      Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and those similarly situated, demands a trial by jury on all issues so triable as a matter of right.

### Certification Under Penalty of Perjury That Artificial Intelligence Was Not Used in the Preparation of This Filing

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. After diligent inquiry and under penalty of perjury, I certify that artificial intelligence was not utilized in the preparation of this filing in any way. I understand that, whether I represent myself or I am an attorney representing a client, I have an affirmative obligation to read each case cited in this filing. If I fail to do so and a case upon which I rely does not exist or does not reasonably stand for the cited

16

proposition, I understand that the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

Dated this 17th day of July 2026.

Respectfully submitted,

*/s/ Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No. 0085476
Richard Celler Legal, P.A.
7951 SW 6th Street, Suite 316
Plantation, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
Email:
**noah@floridaovertimelawyer.com**

*Counsel for Plaintiff*

17